# THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL ACTION NO. 3:23-CV-00016-RJC-SCR

| | |
|---|---|
| BOHOBLU, LLC, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| BLUBOHO.COM INC., et. al., | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on a Motion to Dismiss for Lack of Personal Jurisdiction submitted by Defendants BluBoho Inc. ("BBI"), BluBoho.Com, Inc. ("BB.Com"), and 7342543 Canada Inc. ("7342543"), (Doc. No. 23), and the parties' briefs and exhibits. (Doc. Nos. 24-26).

The Motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and are ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that these Defendants' Motions to Dismiss be <u>granted in part</u> and <u>denied in part</u>.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff BohoBlu, LLC asserts that Defendants BBI, BB.Com, and 7342543 are knowingly and intentionally adopting and using a trademark that is nearly identical, and confusingly similar, to Plaintiff's trademarks in the United States. (Doc. No. 13). The BOHOBLU Mark was registered

on the Principal Register of the United States Patent and Trademark Office ("USPTO") on November 11, 2014, as U.S. Trademark Registration No. 4,634,585 (the '585 Registration).  Id. ¶ 23.  Plaintiff alleges claims of (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114; (2) false designation of origin and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); (3) unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1, et seq.; and (4) unfair competition under North Carolina common law.  Id. ¶¶ 1, 49-76.

Plaintiff is a limited liability corporation organized under the laws of North Carolina with its principal place of business located in Greensboro, North Carolina.  Id. ¶ 4.  Plaintiff "sells its products through both brick and mortar locations in Burlington, Greensboro, High Point, Winston, Salem, Durham, and Raleigh, North Carolina, as well as nationwide through its website located at www.bohoblu.com."  Id. ¶ 2.

Defendants BBI, BB.Com, and 7342543 are all "corporations duly organized and validly existing under the laws of the Province of Ontario, Canada," with their principal places of business also located in the Ontario, Canada.  Id. ¶¶ 5-7.  Plaintiff alleges that Defendants "operate as a single business enterprise, integrating resources to achieve the common business purpose of selling jewelry under the 'BLUBOHO' Mark."  Id. ¶¶ 8, 27.  BBI owns and operates brick-and-mortar retail stores in the provinces of Ontario and Alberta within Canada, and BB.Com sells jewelry in Canada and in the United States through its website, www.bluboho.com.  Id. ¶¶ 3, 8, 27. According to Defendants, 7342543 is a holding company, which apparently owns certain BLUBOHO registrations in Canada, and permits both BBI and BB.Com to use its BLUBOHO marks.  (Doc. No. 24 at 1).[1]

---

[1]  Plaintiff's Complaint contains little information on Defendant 7342543 other than its filing with the USPTO.  (Doc. No. 13 ¶¶ 7, 15, 41, 42).  The Declaration of Margaret Vermeulen references the Trademark Holding Company as 7242542 instead of 7342543.  (Doc. No. 24-1 ¶¶ 17-18, Declaration of Margaret Vermeulen).  The record is unclear

Plaintiff alleges this court has *in personam* jurisdiction over each Defendant because they are "conducting business and is engaged in trademark infringement and unfair competition in this district." (Doc. No. 13 ¶¶ 14-16). Specifically, Plaintiff maintains that Defendants BBI and BB.Com offered for sale and/or have sold infringing goods to businesses and consumers in North Carolina. Id. ¶ 9. Plaintiff alleges that "in 2020 and again 2022[,] Defendants working in concert sent targeted requests [via email] to The Golden Carrot, a North Carolina limited liability company . . . to carry and sell Defendants' jewelry under the infringing BLUBOHO mark at its Charlotte, NC store." Id. ¶¶ 16, 29-31. And that "Defendants did in fact establish The Golden Carrot as a wholesale account and have made multiple, and increasing, sales and shipments of their jewelry in 2022 and 2023 to The Golden Carrot in North Carolina for resale at its brick-and-mortar boutique located in Charlotte, NC." Id. ¶ 32. Defendants acknowledge that BBI originally emailed The Golden Carrot in 2020 as part of a lead list "in connection with similar emails to other similar retailers, and then again with another email blast in 2022." (Doc. No. 24 at 4). At the time, Defendants believed The Golden Carrot was in New Jersey. (Doc. No. 24 at 4; Doc. No. 24-1 ¶ 21, Declaration of Margaret Vermeulen; Doc. No. 24-2 ¶ 12, Declaration of Andrew Vermeulen). Defendants state that The Golden Carrot has never ordered from BBI or 7342543, but acknowledge that The Golden Carrot placed two orders with BB.Com in late 2022 and two more in 2023. (Doc. No. 24 at 4; Doc. No. 24-1 ¶ 22, Declaration of Margaret Vermeulen; Doc. No. 24-2 ¶ 16, Declaration of Andrew Vermeulen).[2]

---

whether 7242542 is a separate holding company from Defendant 7342543, or whether this was an error. Defendants' counsel, in its briefing, only refers to Defendant 7342543 as the "Trademark Holding Company"). (Doc. No. 24 at 1).

[2] There are inconsistencies in the statements made by Defendants in their Declarations related to payments made by The Golden Carrot for the two orders in late 2022 and two orders in 2023. Defendants counsel has represented that "payment has not even been received for the two 2023 orders" citing the Declaration of Andrew Vermeulen. (Doc. No. 24 at 4). The Declaration of Andrew Vermeulen, however, states that "The orders have been fulfilled by .Com, but payment *has not* been received *for the first two*." (Doc. No. 24-2 ¶ 16, Declaration of Andrew Vermeulen)

Plaintiff also alleges that BB.Com has sold and shipped items with the alleged infringing mark to the United States, including to customers in North Carolina and in this District. Id. ¶¶ 8-9. Defendants acknowledge that BBI had nine sales to North Carolina before 2020, totaling $2,741.80. (Doc. No. 24-1 ¶¶ 17-18, Declaration of Margaret Vermeulen). According to the Declaration of Margaret Vermeulen, "[e]ffective October 1, 2020, we split the BBI business into its brick-and-mortar and online portions, with the online business going into [BB].Com." Id. ¶ 12. And since 2020 when BB.Com became responsible for internet sales, BBI has had no further sales to North Carolina. Id. ¶¶ 16-17. However, BB.Com has had another 60 transactions between 2020-2023 involving shipments to North Carolina, but notes that such transactions accounted for only between 0.03% and 1.18% of BB.Com's annual sales. Id. ¶¶ 7, 9-10.

As a result of Defendants' actions, Plaintiff asserts that it has "already experienced actual confusion with customers mistakenly believing that BohoBlu and Bluboho were the same or affiliated" and that customers of Defendants have attempted to "return merchandise purchased" from Defendants to Plaintiff. Id. ¶ 38. Plaintiff sent Defendants a cease-and-desist letter on or about May 22, 2022, but this did not resolve the dispute. Id. ¶¶ 39-40.

On December 21, 2022, Defendant 7342543 filed a federal trademark application in the United States. Id. ¶ 41. On February 8, 2023, the USPTO refused Defendant 7342543 Canada Inc.'s trademark application because of a likelihood of confusion with Plaintiff's BohoBlu existing trademark registration. Id. ¶ 42. Also, following the commencement of this lawsuit, Defendants

---

(emphasis added). Meanwhile, the Declaration of Margaret Vermeulen indicates that "The orders have been fulfilled by .Com, and payment *has been* received *for the first two*." (Doc. No. 24-1 ¶ 22, Declaration of Margaret Vermeulen) (emphasis added). It is unclear if this is a scrivener's error. The Court further notes that the Declaration of Margaret Vermeulen states that she made errors in a prior declaration dated April 4, 2023, submitted to this Court which "inadvertently listed an errant number for 2020's sales by BBI in that it listed a single sale to North Carolina" when in reality there were nine sales. Id. ¶ 19. Ms. Vermeulen indicates "[t]he mistake arose from human error in reviewing a spreadsheet." Id. While the Court certainly appreciates the candor and corrections of such errors, these continued issues concern the Court. Defendants are cautioned to ensure the information submitted via Declaration in the future is accurate as the signatories are declaring under penalty of perjury that the information is true and correct.

BBI and BB.Com countersued Plaintiff by filing an action in Canada on June 22, 2023. Although the claims are different, the facts relate to the use and actions of Plaintiff involving the BOHOBLU versus the BLUBOHO marks. (Doc. Nos. 24 at 5 & 24-5, Canadian Lawsuit).

Now, Defendants, in their pending motion, ask the Court to dismiss Plaintiff's First Amended Complaint, (Doc. No. 13) for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). (Doc. No. 23).

## II.    DISCUSSION

### A.    Standard of Review

"When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989) (citing 2A Moore's Fed. Prac. ¶ 12.07[2.2]). However, like here, "when the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016); see also Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 561 (4th Cir. 2014). "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs, 886 F.2d at 676; see also Universal Leather, LLC, 773 F.3d at 558. However, courts need not assume the truth of allegations in a pleading which are contradicted by affidavit. Wolf v. Richmond Cnty. Hosp. Auth., 745 F.2d 904, 908 (4th Cir. 1984); Clark v. Remark, 993 F.2d 228, 1993 WL 134616, at *2 (4th Cir. 1993) (unpublished table decision).

## B.     Personal Jurisdiction

"It is axiomatic that, in order for a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied.  First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements."  Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001) (citing Stover v. O'Connell Assocs. Inc., 84 F.3d 132, 134 (4th Cir. 1996)).  Accordingly, "North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4, governs the reach of federal courts in North Carolina over out-of-state defendants, subject to the federal constitutional constraints of the Due Process Clause of the Fourteenth Amendment on the state's application of its long-arm statute."  True Homes LLC v. Clayton Homes, Inc., No. 3:18-CV-000345-KDB-DCK, 2020 WL 6528861, at *11 (W.D.N.C. Nov. 5, 2020).  "Courts have long held . . . that North Carolina's long-arm statute extends to the maximum boundaries allowed by the Due Process Clause."  Id. (citing English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990)); see also Universal Leather, LLC, 773 F.3d at 558; Ctr. for Cmty. Self-Help v. Self-Fin., Inc., No. 1:21-CV-862, 2023 WL 1779831, at *2 (M.D.N.C. Feb. 6, 2023) (citing Dillon v. Numismatic Funding Corp., 231 S.E.2d 629, 630 (N.C. 1977)).

North Carolina's long-arm statute provides, inter alia, "for jurisdiction over any validly served—defendant who 'is engaged in substantial activity within [North Carolina], see N.C. Gen. Stat. § 1-75.4(1)(d), or whose act or omission gave rise to the action claiming injury to person or property in North Carolina, see N.C. Gen. Stat. § 1-75.4(3)."  Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist, 259 F.3d at 215.  "Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether the defendant has such 'minimal contacts' with the forum state

that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Id. (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)); see also UMG Recordings, Inc. v. Kurbanov, 963 F.3d 344, 351 (4th Cir. 2020) (quoting Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009)).

Under the Due Process Clause, a court can have personal jurisdiction over a defendant in either of two ways: (1) "general personal jurisdiction over a defendant who has continuous and systematic contacts with the forum state regardless of whether the relevant conduct occurs," or (2) "specific personal jurisdiction, which requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state." Wall Recycling, LLC v. 3TEK Glob., LLC, 497 F. Supp. 3d 30, 37 (M.D.N.C. 2020) (quoting Pan-Am. Prod. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 677 (M.D.N.C. 2011)); ALS Scan, Inc. v. Digit. Serv. Consultants, Inc. 293 F.3d 707, 711-12 (4th Cir. 2002). Here, the parties agree that this Court does not have general personal jurisdiction over any of Defendants. (See Doc. No. 24 at 10-11 & Doc. No. 25 at 11 n.1). The undersigned agrees, and as a result, will proceed with analyzing specific jurisdiction.

## C.    Specific Jurisdiction

A court may exercise specific jurisdiction when "the defendant has purposefully directed [its] activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985); Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. 351, 359 (2021) (noting that as compared to general jurisdiction, specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims."); Int'l Shoe Co., 326 U.S. at 319.

The Fourth Circuit evaluates the following factors to determine whether the exercise of specific jurisdiction is appropriate: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claim[] arise[s] out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." UMG Recordings, Inc., 963 F.3d at 351-52 (quoting Consulting Eng'rs Corp., 561 F.3d at 278); Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 189 (4th Cir. 2016) (quoting ALS Scan, Inc., 293 F.3d at 712); dmarcian, Inc. v. dmarcian Eur. BV, 60 F.4th 119, 133 (4th Cir. 2023).

As to this first prong, purposeful availment, courts require that the defendant create a "substantial connection" with the forum by "deliberately" engaging in activities with the forum state or by creating "continuing obligations" with the forum state's residents. Burger King Corp., 471 U.S. at 475-76. This requirement ensures that a defendant will not be subject to jurisdiction based on "random," "fortuitous," or "attenuated" contacts with the forum or the "unilateral activity of another party or a third person." Id. at 475.

"The second prong of the test for specific jurisdiction—that the plaintiff's claims arise out of the activities directed at the forum—requires that the defendant's contacts with the forum state form the basis of the suit." Consulting Eng'rs Corp., 561 F.3d at 278-79. Under this prong, courts consider the "effects test" such that personal jurisdiction is proper when "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 398 n.7 (4th Cir. 2003) (citing IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265-66 (3d Cir. 1998)). As to the

first element of this effects test, trademark infringement is considered an intentional tort.  See Premier Rsch. Int'l, LLC v. Medpace Inc., No. 1;19CV1147, 2020 WL 5821268, at *8 (M.D.N.C. Sept. 30, 2020) (citing Firebirds Int'l, LLC v. Firebird Rest. Grp., LLC, No. 3:16-CV-00774-RJC-DSC, 2017 WL 4366750, at *7 (W.D.N.C. Oct. 2, 2017)).  "In cases of trademark infringement, the wrong occurs not only at the place where the infringing label is affixed but also where the confusion occurs."  dmarcian, Inc. v. dmarcian Eur. BV, No. 1:21-CV-00067-MR, 2021 WL 2144915, at *6 (W.D.N.C. May 26, 2021), aff'd, 60 F.4th 119 (4th Cir. 2023) (quoting Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Robinson, 123 F. Supp. 2d 965, 972 (W.D.N.C. 2000)).

In considering the third prong of specific personal jurisdiction, constitutional reasonableness, courts "ensure the appropriateness of the forum."  Consulting Eng'rs Corp., 561 F.3d at 279.  Courts consider factors including:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

Id.

Plaintiff submits its basis for personal jurisdiction as to Defendants BBI and BB.Com[3]  is two-fold: (1) Defendants BBI and BB.Com sent targeted solicitations to The Golden Carrot, a North Carolina limited liability company, to carry and sell items with the infringing mark to customers in North Carolina; and (2) Defendants BBI and BB.Com sold and shipped items with the infringing mark to customers in North Carolina via website activity.  (Doc. Nos. 13 & 25).  As

---

[3] The undersigned is mindful and respectful of corporate formalities, and has individually analyzed this Court's personal jurisdiction over *each* Defendant.  Here, the undersigned has carefully attributed facts in the record each to BBI and separately to BB.Com that demonstrate personal jurisdiction is appropriate.  Plaintiff has asserted that Defendant 7342543 Canada is subject to jurisdiction under different theories, either the single entity theory or Rule 4(k)(2), which is separately analyzed herein.  (Doc. No. 25 at 14 n.2).

to the first prong, in the business context, the Fourth Circuit has identified several nonexclusive factors courts should consider, including:

> whether the defendant maintains offices or agents in the forum state; whether the defendant owns property in the forum state; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum state would govern disputes; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; the nature, quality and extent of the parties' communications about the business being transacted; and whether the performance of contractual duties was to occur within the forum.

Consulting Eng'rs Corp., 561 F.3d at 278 (internal citations omitted). The test "is not susceptible to a mechanical application" and is "flexible." dmarcian, Inc., 60 F.4th at 133 (citing UMG Recordings, Inc., 963 F.3d at 352).

Defendants BBI and BB.Com neither maintain offices or agents in North Carolina nor do they own property here. Defendants and its primary leadership have not visited North Carolina for business purposes.[4] From the record before this Court, there are no contracts that govern performance of contractual duties or contain forum selection clauses involving North Carolina. These factors weigh against personal jurisdiction, but the inquiry does not end there. Instead, Plaintiff argues that Defendants BBI and BB.Com have reached into the forum state to solicit or initiate business and that these solicitation communications have resulted in several business transactions.

Plaintiff alleges that Defendant BBI, "performing work for Defendant BB.Com," sent targeted email solicitations to The Golden Carrot, a North Carolina limited liability company "in or around 2020 seeking to establish a wholesale relationship," and "did in fact establish [T]he

---

[4] In the Declaration of Andrew Vermeulen, Mr. Vermeulen notes that he has only been to North Carolina traveling through an airport or vehicle, but it was more than five years ago. (Doc. No. 24-2 ¶ 2, Declaration of Andrew Vermeulen).

Golden Carrot as a wholesale account and have made multiple, and increasing, sales and shipments of their jewelry in 2022 and 2023 to [T]he Golden Carrot in North Carolina for resale at its brick[-]and[-] mortar boutique located in Charlotte, NC." (Doc. No. 13 ¶¶ 29-32).

Defendants acknowledge that "BBI was given The Golden Carrot's name for a lead list of stores to contact by email . . ." and that BBI originally emailed The Golden Carrot in 2020 "in connection with similar emails to other similar retailers, and then again with another email blast in 2022 . . . ." (Doc. No. 24 at 4; Doc. No. 24-1 ¶ 21, Declaration of Margaret Vermeulen; Doc. No. 24-2 ¶ 12, Declaration of Andrew Vermeulen). Defendant BBI's majority owner, Ms. Vermeulen, states in her declaration that "I created a lead list of potential buyer stores to contact by email for BBI . . . [and] [t]his is how I learned of The Golden Carrot . . . and BBI then emailed The Gold Carrot in 2020." (Doc. No. 24-1 ¶ 21, Declaration of Margaret Vermeulen). She further concedes in her Declaration that in 2022, "*one of BBI's employees performed work for .Com, and on behalf of .Com, emailed The Golden Carrot* and the other stores on the lead list." Id. at ¶ 22 (emphasis added). Defendants acknowledge that The Golden Carrot placed two orders with BB.Com in late 2022 and two more in 2023, but make clear The Golden Carrot has never ordered from Defendant BBI. (Doc. No. 24 at 4; Doc. No. 24-1 ¶ 22, Declaration of Margaret Vermeulen; Doc. No. 24-2 ¶ 16, Declaration of Andrew Vermeulen).

Defendants argue, among other things, that personal jurisdiction is lacking because Defendants genuinely believed, though admittedly "perhaps errantly" that The Golden Carrot was located in New Jersey, rather in North Carolina. (Doc. No. 26). Plaintiff counters that The Golden Carrot "converted from a New Jersey limited liability company" to a North Carolina limited liability company in 2018, well before the 2020 or 2022 solicitation emails, so both Defendants BBI and BB.Com knew or should have known that The Golden Carrot was a North Carolina

business.  (Doc. Nos. 13 ¶ 30; 25-1, 25-2, The Golden Carrot LLC's State of North Carolina, Articles of Organization); UMG Recordings, Inc., 963 F.3d at 354.  Plaintiff included an Affidavit accompanying its Opposition Brief with a screenshot of The Golden Carrot's commercial website, which has the wording "Say 'Hello' the next time you're in South End" with a Charlotte, North Carolina address and phone number below.  (Doc. No. 25-3).[5]  Plaintiff alleges, which is uncontroverted, that the business relationship with The Golden Carrot required BB.Com to mail of jewelry orders to a North Carolina shipping address.  (Doc. No. 13 ¶ 32).  Plaintiff points out that the orders, which occurred in late 2022, with The Golden Carrot were made *after* Plaintiff sent its Cease-And-Desist Letter on or about May 5, 2022, notifying Defendants of its trademark rights and use in North Carolina.  (Doc. No. 25 at 11, 13; Doc. No. 24-2 ¶ 16, Declaration of Andrew Vermeulen; Doc. No. 13 ¶¶ 31-32, 39).  The undersigned finds this significant because an employee of BBI, on behalf of BB.Com (as acknowledged by Ms. Vermeulen's Declaration), reaches out to The Golden Carrot.  This in turn results in sales in late 2022 and in 2023 shipped to North Carolina (an uncontroverted fact), after Plaintiff allegedly sent its Cease-And-Desist Letter to Defendants on or about May 5, 2022, complaining of its conduct in North Carolina.  Considering all of this and the timeline, the Court finds it dubious, if not implausible, that Defendants BBI and BB.Com were oblivious that they would not have known or understood they were conducting business with The Golden Carrot in North Carolina.

Even assuming *arguendo* that Defendants interactions with The Golden Carrot were insufficient to confer personal jurisdiction, Plaintiff also relies on several internet sales and

---

[5] Defendants presented information from social media that suggests The Golden Carrot also used a New Jersey address.  (Doc. No. 24-2, Declaration of Andrew Vermeulen).  Plaintiff, by a counter affidavit, attaches a screenshot of The Golden Carrot's commercial website dating back to August 15, 2018, which indicates a North Carolina location, and points out shipment of sales would have required using a North Carolina shipping address.  (Doc. Nos. 25 at 15-16; 25-1; 25-2; 25-3).

shipments by Defendants BBI and BB.Com to customers in North Carolina as a proper basis for jurisdiction. (Doc. Nos. 13 ¶¶ 8, 9 & 26 at 2 (quoting Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 279-80 (4th Cir. 2009)).

Defendants admit that BBI had nine sales to North Carolina before 2020, totaling $2,741.80 in Canadian dollars, or $2,069 in U.S. Dollars. (Doc. No. 24-1 ¶¶ 17-18, Declaration of Margaret Vermeulen). Since 2020, when BB.Com became responsible for internet sales, BBI has had no further sales to North Carolina. Id. ¶¶ 16-17. However, between 2020-2023, Defendants acknowledge that BB.Com has had another 60 sale transactions totaling $52,331.71 in Canadian Dollars or $39,477 in U.S. Dollars via its website involving sales to persons or companies providing a North Carolina shipping address, but Defendants note that such transactions accounted for only between 0.03% and 1.18% of BB.Com's annual sales. (Doc. No. 24-2 ¶¶ 7, 9-10,16, Declaration of Andrew Vermeulen).

In the internet context, the Fourth Circuit has recognized that purposeful availment also may be satisfied where a defendant: "(1) directs electronic activity into the [s]tate, (2) with the manifested intent of engaging in business or other interactions within the State, [if] (3) that activity creates, in a person within the [s]tate, a potential cause of action cognizable in the [s]tate's courts." ALS Scan, Inc., 293 F.3d at 714; Young v. New Haven Advocate, 315 F.3d 256, 263 (4th Cir. 2002) (noting the first two factors could be considered together). The ALS Scan factors were derived from the sliding scale model first articulated in Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997). ALS Scan, Inc., 293 F.3d at 713. Under Zippo, a "passive" website that "does little more than make information available" will not support jurisdiction. 952 F. Supp. at 1124. On the other side of the scale, if a defendant "clearly does business over the Internet" by "enter[ing] into contracts with residents of a foreign jurisdiction that

involve the knowing and repeated transmission of computer files," then jurisdiction is proper.  Id.
And many times, the interactivity is somewhere in the middle of the scale in between these two
scenarios.  Id.  The Fourth Circuit in ALS Scan, however, cautioned that while "[t]he interactivity
of a website" as measured on the sliding Zippo scale is a "jurisdictionally relevant fact," courts
should not "attach too much significance on the mere fact of interactivity" and "los[e] sight of the
key issue in a specific jurisdiction case—whether 'the defendant has purposefully directed [its]
activities at residents of the forum.'"  Fidrych v. Marriott Int'l, Inc., 952 F.3d 124, 141-42 (4th
Cir. 2020) (quoting Burger King, 471 U.S. at 472); see also Ctr. for Cmty. Self-Help, 2023 WL
1779831, at *3.

       Defendants BBI and BB.Com argue that such sales are at "very low level" and "have never
been more than 1.2% of [BB.Com's] total sales in a single year," and thus, should be insufficient
to establish specific jurisdiction because they were so limited.  (Doc. No. 26 at 1-2; Doc. No. 24
at 18).  Despite the low percentage of overall sales, courts do not exclusively consider percentages
rather than total numbers.  Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d at 397
(noting that courts "should not 'merely . . . count the contacts and qualitatively compare this case
to other preceding cases" because "even a single contact may be sufficient to create jurisdiction
when the cause of action arises out of that single contact . . . .") (citing Burger King Corp., 471
U.S. at 477-78); Ctr. for Cmty. Self-Help, 2023 WL 1779831, at *5-6 (recognizing single-digit
percentages are not dispositive because if, hypothetically, a defendant provides website services
in all 50 states in the U.S., if equally distributed across all states, it would only be 2% of business
in every state); Zippo, 952 F. Supp. at 1124 (finding personal jurisdiction in trademark case while
only two percent of internet subscribers from Pennsylvania).

Instead, the Fourth Circuit has emphasized that "courts should consider 'the quality and nature of the defendant's connection, not merely the number of contacts between the defendant and the forum state.'" dmarcian, Inc., 60 F.4th at 134 (citing UMG Recordings, Inc., 963 F.3d at 352). Here, the Court has considered the quality and nature of both Defendants BBI's and BB.Com's connection and finds such contacts with North Carolina were not neither passive nor random. Id.; Ctr. for Cmty. Self-Help, 2023 WL 1779831, at *5 (citing UMG Recordings, Inc., 963 F.3d at 349 and Rice v. PetEdge, Inc., 975 F. Supp. 2d 1364, 1371 (N.D. Ga. 2013)).

Indeed, Defendants did not merely engage in couple of one-off sales via their website to North Carolina, but instead engaged in 69 total transactions with shipping to both businesses and consumers with North Carolina addresses.[6] This started out at a lower level of nine sales with BBI in 2020 before it split its brick-and-mortar stores and online portions, with online business going to BB.Com. BB.Com had another 60 total transactions involving sales to persons or companies providing a North Carolina shipping address 2020-2023.[7] Plaintiff also submits information that the bluboho.com website includes information about shipping to the United States, including rates, and offers the option for payment in U.S. Dollars prices, which "have duties and taxes already built in." (Doc. Nos. 25-1 & 25-4). This level of interactivity supports the Court's finding that Defendants' electronic activity and repeated sales and shipment of orders to both companies and consumers in North Carolina was purposefully directed with the manifested intent of engaging in business or other interactions within the State.[8] Savvy Rest, Inc. v. Sleeping Organic, LLC, No.

---

[6] The undersigned further observes Plaintiff has not asserted personal jurisdiction on a "stream of commerce" theory, as further described in Fed. Ins. Co. v. Lake Shore Inc., 886 F.2d 654, 659 (4th Cir. 1989). (Doc. No. 25 at 14).

[7] Based on the record, BB.Com's sales to persons or companies providing a North Carolina shipping address is lower than in 2022, which was 40 sales, but the sales data is limited to a partial year through July 2023.

[8] The Court is unpersuaded that BBI has not had sufficient contacts with North Carolina to confer personal jurisdiction. While BBI had nine internet sales prior to 2020, its majority owner acknowledges creating BB.Com to take over the internet sales in 2020. Defendant BBI acknowledges working on behalf of BB.Com sending the solicitation emails to The Golden Carrot, which resulted in sales shipped to North Carolina. The Court must take all of the record into

3:18CV00030, 2019 WL 1435838, at *5 (W.D. Va. Mar. 29, 2019) (finding "Sleeping Organic has used the website to sell over 80 mattresses to residents of Virginia and generate more than $200,000.00 in gross sales" and thereby, "it purposefully availed itself of the privilege of conducting business in the state, . . . satisfying the first requirement for specific jurisdiction."); Thousand Oaks Barrel Co., LLC v. Deep South Barrels LLC, 241 F.Supp.3d 708, 716–17 (E.D. Va. 2017) (collecting cases where "courts have persuasively concluded that personal jurisdiction exists . . . where the defendant has a national interactive e-commerce website that generates a small amount of e-commerce in the forum state" and noting "[t]he lack of ads targeted at [the forum state] does not change the fact that [defendant] used its website to reach into [the forum state] to do business there."); Tool Shed, Inc. v. Mattoon Rural King Supply, Inc., No. 6:17-cv-1660, 2017 WL 4222885, at *3, 2017 U.S. Dist. LEXIS 154888, at *6 (D.S.C. Sept. 22, 2017) (finding the sale of alleged infringing products to South Carolina addresses through its website was sufficient to establish specific jurisdiction); Collier v. Land & Sea Rest. Co., LLC, No. 7:13-cv-00104, 2014 WL 5254916, at *8, 2014 U.S. Dist. LEXIS 147118 at *26 (W.D. Va. Oct. 15, 2014) ("Norm Bloom in fact sold to a number of Virginia customers and thus purposefully availed itself of the privilege of selling its products in Virginia, including shipping those products directly to Virginia.").  And it is the result of Defendants' purported actions and contacts with the forum state of which Plaintiff has complained and that gives rise to this cause of action.  Therefore, considering the record, the applicable standard and caselaw, the Court finds the purposeful availment prong is satisfied.

---

account and follow the Fourth Circuit's clear direction that such analysis is not meant to be rigid but "flexible." dmarcian, Inc., 60 F.4th at 133 (citing UMG Recordings, Inc., 963 F.3d at 352).  Accordingly, the Court for the reasons stated herein, finds Plaintiff has made a prima facie case establishing personal jurisdiction.

The analysis of the second prong—that Plaintiff's claims arise out of the activities directed at North Carolina—"is generally not complicated." <u>UMG Recordings, Inc.</u>, 963 F.3d at 354. "Where activity in the forum state is the genesis of [the] dispute, this prong is easily satisfied." <u>Id.</u> (quoting <u>Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.</u>, 682 F.3d 292, 303 (4th Cir. 2012)). Here, as previously observed, Plaintiff's specific claims in this lawsuit arise out of or relate to Defendants BBI's and BB.Com's directed activity to North Carolina. The genesis of this dispute—the alleged trademark infringement and misuse of the BOHOBLU mark—occurred through Defendants BBI's and BB.Com's activity in North Carolina. As discussed in the above analysis, the Court finds Plaintiff has made a prima facie showing that Defendants expressly aimed its conduct at the forum state.[9] As a result of Defendants' trademark infringement, an intentional tort,[10] Plaintiff has claimed that it "felt the brunt of harm" here in North Carolina as Plaintiff has "already experienced actual confusion with customers mistakenly believing that BohoBlu and Bluboho were the same or affiliated." (Doc. No. 13 ¶ 38). Plaintiff has even alleged that Defendants' customers have erroneously returned merchandise back to Plaintiff in North Carolina due to the confusion between the two marks.[11] <u>Id.</u> Accordingly, Plaintiff also has

---

[9] Defendants rely on <u>Fidrych v. Marriott Int'l, Inc.</u>, 952 F.3d 124, 141-42 (4th Cir. 2020), to support their contention that sales made via the internet alone may not be sufficient to confer personal jurisdiction. However, the Court finds Defendants argument misses the mark. In <u>Fidrych</u>, the Fourth Circuit observed that "none of the wrongs Marriott is allege to have committed took place in [the forum state.]" <u>Id.</u> at 140. The instant case is factually different because Plaintiff's trademark infringement claims are alleged to have occurred and created confusion here in the forum state of North Carolina.

[10] Defendants attempt to argue that this prong fails because BBI did not commit an intentional tort of trademark infringement based on the specific facts of this case. (Doc. No. 24 at 20). However, deciding the ultimate facts of the alleged trademark infringement, i.e., whether it occurred or not, is not appropriate at this stage of the litigation. The undersigned's inquiry is limited to the personal jurisdiction analysis based on the standard and case law cited herein.

[11] It is worth reiterating that the dispute between the parties has given rise to another later-in-time lawsuit in Canada, whereas Defendants BBI and BB.Com have affirmatively chosen to sue the North Carolina-based Plaintiff. The Court need not reach a conclusion about the potential impact on specific jurisdiction, if any, of Defendants' affirmative choice to serve and sue the North Carolina-based Plaintiff because Plaintiff has instead relied on Defendants BBI and BB.Com's solicitation and sales with The Golden Carrot in addition to other website activity in North Carolina as its basis for personal jurisdiction.

sufficiently made a prima facie showing as to the second prong of the specific personal jurisdiction over BBI and BB.Com.

In considering the third prong constitutional reasonableness, the Court finds that the exercise of specific personal jurisdiction over Defendants BBI and BB.Com is consistent with the "traditional notions of fair play and substantial justice." Int'l Shoe Co., 326 U.S. at 316. Defendants BBI and BB.Com, as Canadian businesses, would no doubt be inconvenienced by defending this lawsuit in North Carolina; however, the inconvenience is "not so grave as to offend constitutional due process principles." Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist, 259 F.3d at 217; see also Tire Eng'g, 682 F.3d at 303 (noting that a "corporate defendant's domicile abroad, standing alone, does not render domestic exercise of jurisdiction unduly burdensome."); CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 296 (4th Cir. 2009) ("As shown by these proceedings, [the defendant, which was located in India] has been able to secure counsel to represent its interests, and its litigation burden is thus no more substantial than that encountered by other entities that choose to transact business in [the forum state]."). Defendants BBI and BB.Com have successfully retained counsel in North Carolina, and as the Court can discern through the thorough briefing on this matter, Defendants' counsel is well-equipped to defend the lawsuit.

North Carolina also maintains a "substantial interest" in "deterring trademark infringement" that is implicated by the sale of products with infringing marks in its state where the harm is felt by another North Carolina business. Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist, 259 F.3d at 217-18; Tire Eng'g & Distrib., LLC, 682 F.3d at 303; CFA Inst., 551 F.3d at 296-97; dmarcian, Inc., 60 F.4th at 135 ("North Carolina has a strong interest in protecting it companies' rights from foreign infringements, and North Carolina companies like [Plaintiff]

maintain a strong interest in relying on their home forum for vindication of their legitimate rights.").  Plaintiff too has a weighty interest in "obtaining convenient and effective relief" as a North Carolina-based business.  Plaintiff has pled that it "has expended a great deal of time and funds building and promoting the business operated under the BOHOBLU Mark, resulting in valuable goodwill and consumer recognition and association of the BOHOBLU Mark with BohoBlu and its goods and services" and now it has suffered harm from the alleged trademark infringement by Defendants.  Also, "foreign courts cannot apply United States trademark law," and as a result, Plaintiff's "interest in obtaining relief in this forum is particularly high."  dmarcian, Inc., 2021 WL 2144915, at *11; Tire Eng'g & Distrib. LLC, 682 F.3d at 305 (recognizing states have "an interest in ensuring that the nation's copyright and trademark laws are not violated within its borders.").  Therefore, the Court finds that exercising personal jurisdiction over Defendants BBI and BB.Com is constitutionally reasonable.

In sum, the undersigned finds Plaintiff has carried its burden and the exercise of specific personal jurisdiction is appropriate.  Accordingly, the undersigned respectfully recommends denying Defendants BBI and BB.Com's Motion to Dismiss at this stage.

### D.    Other Theories of Personal Jurisdiction

Plaintiff has asserted that Defendant 7342543 Canada is subject to personal jurisdiction under different theories, either a single entity theory or Rule 4(k)(2).  (Doc. No. 25 at 14 n.2).  As context, Defendant 7342543 is a holding company that was created to hold the Canadian BLUBOHO registrations.  Ms. Vermeulen is the majority owner of Defendant 7342543. Defendant 7342543 does not do business (other than to own and hold the BLUBOHO marks as registered in Canada), has no employees, no sales, and no revenues.  (Doc. No. 24 at 23). According to Defendants, 7342543 does not use the BLUBOHO mark itself, but permits BBI and

BB.Com to use the marks.  Id.  It has never sold any goods or services into North Carolina.  Id.

Defendants acknowledge that its only contact with the United States is that it filed a trademark

application with the USPTO for a BLUBOHO mark in December 2022.  Id.

Plaintiff urges the Court to consider BBI, BB.Com, and 7342543 as single business entity,

permitting horizontal veil piercing, to establish personal jurisdiction over 7342543, and cites

Duong v. N. Am. Transp. Services LLC, 2:17-CV-01089-DCN, 2019 WL 13109647, at *13

(D.S.C. Sept. 25, 2019) (quoting Pertuis v. Front Roe Restaurants, Inc., 817 S.E.2d 273, 279

(2018)); Pan-Am. Products & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 687

(M.D.N.C. 2011).  Plaintiff maintains that all three companies act as one, but Plaintiff's Complaint

only includes conclusory assertions in this regard: "Upon information and belief, Defendants

operate as a single business enterprise, integrating resources to achieve the common business

purpose of selling jewelry under the 'BLUBOHO' Mark."  (Doc. No. 13 ¶¶ 27, 8).  In fact, there

is very little information at all in Plaintiff's Complaint about 7342543, other than its filing an

application with USPTO.  (Doc. No. 13 ¶¶ 7, 15, 41, 42).  Without more, this undersigned declines

to disregard the corporate formalities in order to exercise personal jurisdiction over Defendant

7342543.  True Homes LLC, Inc., 2020 WL 6528861, at *12.

Plaintiff further asserts that personal jurisdiction over Defendant 7342543 is appropriate

under Federal Rule of Civil Procedure 4(k)(2).  "This Rule provides for personal jurisdiction

through nationwide service of process over any defendant provided (i) exercise of jurisdiction is

consistent with the Constitution and the laws of the United States, (ii) the claim arises under federal

law, and (iii) the defendant is not subject to the jurisdiction of the courts of general jurisdiction of

any state."  Graduate Mgmt. Admission Council v. Raju, 241 F. Supp. 2d 589, 596–97 (E.D. Va.

2003) (citing Fed. R. Civ. P. 4(k)(2)).  See also Base Metal Trading, Ltd. v. OJSC "Novokuznetsky

Aluminum Factory", 283 F.3d 208, 215 (4th Cir.2002). "Rule 4(k)(2) was added in 1993 to deal with a gap in federal personal jurisdiction law in situations where a defendant does not reside in the United States, and lacks contacts with a single state sufficient to justify personal jurisdiction, but has enough contacts with the United States as a whole to satisfy the due process requirements." Id. (citations omitted).

The requirement that the claim arises under federal law is satisfied because Plaintiff's claims against Defendant 7342543 arise under the Lanham Act. (Doc. No. 13). Plaintiff has further made a showing that Defendant 7342543 is not subject to personal jurisdiction in any other state. Base Metal Trading, Ltd., 283 F.3d at 215. In fact, Defendants concedes as much by acknowledging that its only contact with the United States is the filing of a trademark application with the USPTO for a BLUBOHO mark in December 2022. (Doc. No. 24 at 23). But therein lies the problem. Defendant 7342543's only touchpoint with the United States is filing a trademark application with the USPTO, which was subsequently denied. The parties have cited no law in the Fourth Circuit that such a filing would be sufficient to confer personal jurisdiction under 4(k)(2). In fact, another court in our circuit found such a filing to be insufficient under 4(k)(2) for personal jurisdiction under the "government contacts" exception. Simone v. VSL Pharms., Inc., No. CV TDC-15-1356, 2017 WL 658711, at *6 (D. Md. Feb. 16, 2017) (finding 18 trademark applications with the USPTO and seeking to cancel certain marks did not establish personal jurisdiction because of the "government contacts" exception that provides "petitioning the national government does not count as a jurisdiction contact"). The Fifth Circuit similarly found jurisdiction was improper under Rule 4(k)(2) even though a defendant had filed an application with the USPTO. Quick Techs., Inc. v. Sage Grp. PLC, 313 F. 3d 338, 345 (5th Cir. 2002). Defendants also point out that Plaintiff's claims do not arise from Defendant's 7342543 attempt to register the BLUBOHO marks

by filing the application with the USPTO, which failed in any event. The undersigned agrees because Plaintiff's claims arise from BBI and BB.Com's use of the alleged infringing mark and the harm felt by Plaintiff here in North Carolina as a result. For all of these reasons, the undersigned recommends <u>granting</u> Defendant 7342543's Motion to Dismiss for lack of personal jurisdiction.

## III.   RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendants' Motion to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction (Doc. No. 23) be **GRANTED IN PART** and **DENIED IN PART**. Specifically, that Defendants' Motion be **GRANTED** as to Defendant 7342543 and **DENIED** in all other respects.

## IV.   TIME FOR OBJECTIONS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. <u>Id.</u> "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" <u>Martin v. Duffy</u>, 858 F.3d 239, 245 (4th Cir. 2017) (quoting <u>United States v. Midgette</u>, 478 F.3d 616, 622 (4th Cir. 2007)).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel, and the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED**.

Signed: March 1, 2024

Susan C. Rodriguez
United States Magistrate Judge